RELIANCE INSURANCE COMPANY & others[1] *vs.*
COMMISSIONER OF INSURANCE.

No. 89-P-975.

Suffolk. April 5, 1991. - November 22, 1991.

Present: WARNER, C.J., BROWN, & GREENBERG, JJ.

*Administrative Law*, Exhaustion of remedies, Primary jurisdiction. *Juris-diction*, Primary jurisdiction, Administrative matter. *Commissioner of Insurance. Insurance*, Motor vehicle insurance.

In an action by motor vehicle insurers seeking declarations that the Com-missioner of Insurance lacked the statutory authority to refuse to ac-cept the insurers' attemped surrender of their licenses to conduct motor vehicle liability insurance business, and that the Commissioner's refusal violated the insurers' State and Federal constitutional rights, the judge did not err in granting the Commonwealth's motion to dismiss the in-surers' complaint for reasons of primary jurisdiction, where the Com-missioner was entitled to the initial opportunity to interpret the relevant statutes in order to determine the scope of his authority, where the pos-sibility of further administrative action remained, and where additional administrative proceedings would provide information relevant to the insurers' constitutional claims; furthermore, this court amended the judgment of the trial court so as to specify that it was "without prejudice." [584-591]

CIVIL ACTION commenced in the Superior Court Depart-ment on December 15, 1988.

The case was heard by *Barbara A. Dortch*, J., on a motion to dismiss.

*David I. Finnegan* (*John G. Ryan* with him) for the plaintiffs.

*Thomas A. Barnico*, Assistant Attorney General, for the Commissioner of Insurance.

---

[1]United Pacific Insurance Company and Planet Insurance Company.

*Mark G. Matuschak* (*Robert W. Mahoney & Joseph Maher* with him) for Commonwealth Automobile Reinsurers, amicus curiae.

WARNER, C.J. On December 15, 1988, the plaintiff insurance companies (collectively "Reliance") informed the Commissioner of Insurance (Commissioner) by letter that they were surrendering their licenses to conduct motor vehicle liability insurance business in Massachusetts; they could do so only at a financial loss. According to Reliance, the Commissioner refused to accept its attempted license surrenders at that time. On the same date, Reliance commenced a declaratory judgment action in the Superior Court seeking determinations that (1) the Commissioner lacked statutory authority to refuse to accept the license surrenders; (2) Reliance had become an unlicensed insurance company as of December 15, 1988; (3) as an unlicensed insurance company, Reliance ceased to be a member of the Commonwealth Automobile Reinsurers (CAR);[2] (4) Reliance's postsurrender statutory obligations were exclusively encompassed by specified statutory provisions, not including statutory and regulatory provisions relating to CAR; and (5) the Commissioner's refusal to accept the license surrenders violated Reliance's State and Federal constitutional rights.

On January 23, 1989, the Commissioner moved to dismiss Reliance's complaint for failure to exhaust administrative remedies. Invoking the doctrine of primary jurisdiction, a Superior Court judge granted the motion. From the ensuing judgment, the plaintiffs appeal.

"Although nothing turns on the distinction, we note that, because there had been no administrative proceedings before

---

[2]CAR was allowed to file a brief as amicus curiae. CAR was created under G. L. c. 175, § 113H (1988 ed.), as a residual market mechanism to provide motor vehicle liability insurance to qualified drivers who would otherwise be unable to obtain motor vehicle insurance in the voluntary market. Under § 113H(*c*), companies called "servicing carriers" agree to write involuntary risks. The servicing carrier may "cede" that risk and the associated premium to CAR. The servicing carrier remains responsible for servicing the policy, but the losses and expenses of the policies ceded to CAR are divided among all motor vehicle insurers in Massachusetts.

the filing of the complaint, technically this case does not raise the question whether administrative remedies have been properly exhausted, but rather whether the commissioner, instead of the court, has primary jurisdiction." *Hartford Acc. & Indem. Co. v. Commissioner of Ins.*, 407 Mass. 23, 26 (1990).[3]

Following the attempted surrender and the filing of the complaint, the Commissioner sent Reliance a letter, dated December 21, 1988, stating that, before deciding whether to accept the license surrenders, he would have to review Reliance's withdrawal plans to ensure that they would not disrupt the Massachusetts motor vehicle liability insurance market. He requested detailed information concerning Reliance's liabilities and continuing obligations. Adding that a number of recent withdrawals and attempted withdrawals had created confusion and had imposed additional burdens on remaining companies, he warned that Reliance's abrupt withdrawal could be considered disruptive and could subject it to a proceeding under G. L. c. 175, § 22H.[4] Sanctions imposed

---

[3]The doctrines of primary jurisdiction and exhaustion of remedies serve similar purposes. Each "attempts to 'promote proper relationships between the courts and administrative agencies charged with particular regulatory duties' by determining when and sometimes whether a court should assert jurisdiction over particular claims." *Liability Investigative Fund Effort, Inc.* v. *Medical Malpractice Joint Underwriting Assn.*, 409 Mass. 734, 750 (1991), quoting from *Murphy* v. *Administrator of the Div. of Personnel Admn.*, 377 Mass. 217, 221 (1979). "The doctrine of exhaustion of administrative remedies contemplates a situation where some administrative action has begun but has not yet been completed; where there is no administrative proceeding underway, the exhaustion doctrine has no application. In contrast, primary jurisdiction situations arise in cases where a plaintiff, in the absence of pending administrative proceedings, invokes the original jurisdiction of a court to decide the merits of a controversy." *Id.* at 750-751, quoting from *Murphy* v. *Administrator of the Div. of Personnel Admn.*, 377 Mass. at 220. See generally Cella, Administrative Law and Practice §§ 1723 & 1725 (1986).

[4]General Laws c. 175, § 22H, as amended through St. 1975, c. 750, § 1, provides in part: "If any company refuses to issue motor vehicle liability policies or bonds . . . without a written determination by the commissioner that such refusal . . . is justifiably required to protect the solvency of the refusing company, the commissioner shall hold a public hearing at which the company may appeal the commissioner's initial determination concerning solvency and at which shall be considered whether the company's re-

after a § 22H proceeding could result in the revocation of the licenses of certain other insurance companies owned by Reliance (apparently selling other forms of insurance) whose licenses Reliance had not attempted to surrender.

"The doctrine of primary jurisdiction is founded on the principle 'which counsels a court to stay its hand when the issue in litigation is within the special competence of an agency.'. . . 'By permitting an agency to apply its expertise to the statutory scheme which it is charged to enforce, courts preserve the integrity of the administrative process while sparing the judiciary the burden of reviewing administrative proceedings in piecemeal fashion.' " *Leahy* v. *Local 1526, Am. Fedn. of State, County, & Mun. Employees*, 399 Mass. 341, 346 (1987)(citations omitted). The Commissioner has wide ranging statutory authority to regulate the business of automobile insurance in Massachusetts. G. L. c. 175, § 3A. He has extensive authority over licensure and license revocation. See, e.g., G. L. c. 175, §§ 4, 5, & 22H (insurance companies); §§ 163-177 (brokers and agents). Section 22H authorizes the Commissioner to conduct hearings and, where appropriate, to impose sanctions on companies which refuse to issue motor vehicle insurance policies, in order to "protect[] the stability of the market and the interests of Massachusetts insurance consumers." *Maryland Cas. Co.* v. *Commissioner of Ins.*, 372 Mass. 554, 559-560 (1977). Under § 113H, he supervises the CAR system, which allocates financial responsibility among all Massachusetts automobile insurers for the expenses and losses incurred on policies provided to drivers who would otherwise be unable to obtain insurance.

---

fusal to write motor vehicle liability policies or bonds is contrary to the public interest by disrupting the market for said insurance in the commonwealth. If the commissioner finds, on the basis of said public hearing, that the company's refusal is not justified by the protection of solvency and is contrary to the public interest, he shall suspend such company's licenses to issue or sell any other form of insurance within the commonwealth until such company resumes the issuance or renewal of motor vehicle liability policies or bonds in compliance with the laws and rules and regulations prescribed by the commissioner."

Reliance's request for a declaration that the Commissioner lacks statutory authority to refuse to accept the surrender of its licenses is, in essence, a claim that he acted beyond his jurisdiction. "Where the contention is that [a] board is acting beyond its jurisdiction, the board should have an opportunity to ascertain the facts and decide the question for itself." *Saint Luke's Hosp.* v. *Labor Relations Commn.*, 320 Mass. 467, 470 (1946). *East Chop Tennis Club* v. *Massachusetts Commn. Against Discrimination*, 364 Mass. 444, 452 (1973). *Liability Investigative Fund Effort* v. *Medical Malpractice Joint Underwriting Assn.* (hereafter *LIFE*), 409 Mass. 734, 747 (1991), citing *Gill* v. *Board of Registration of Psychologists*, 399 Mass. 724 (1987). This principle does not apply where the administrative agency has not asserted its jurisdiction or where it "is dealing with a matter that is clearly beyond the scope of its authority." *Saint Luke's Hosp.* v. *Labor Relations Commn.*, 320 Mass. at 470-471. The Commissioner has asserted his primary jurisdiction in this case and has done so in other cases of attempted withdrawal by insurers. In view of the Commissioner's extensive statutory authority to regulate the Massachusetts automobile insurance industry, his refusal to accept Reliance's abrupt withdrawals without first evaluating its continuing statutory and regulatory responsibilities is not "clearly beyond the scope of [his] authority."

Reliance recognizes that an insurer who wishes to withdraw from the Massachusetts market has continuing statutory obligations and that the Commissioner has the responsibility to ensure that these obligations are met. A determination of the scope of the Commissioner's authority to respond to Reliance's attempted license surrenders requires an evaluation of how the surrender would affect the Commissioner's ability to carry out his responsibilities. The jurisdictional question is so closely interwoven with the details of the Commissioner's statutory and regulatory duties and the propriety of agency practices that we think, as did the motion judge, it should be addressed in the first instance by the Commissioner. See *LIFE*, 409 Mass. at 751, citing

*Casey* v. *Massachusetts Elec. Co.*, 392 Mass. 876, 879 (1984), and *Murphy* v. *Administrator of the Div. of Personnel Admn.*, 377 Mass. 217, 221 (1979) (The doctrine of primary jurisdiction is properly invoked where technical factual issues within the expertise and experience of the agency are involved, and where questions involved concern the validity of agency practice). Compare *Kartell* v. *Blue Shield of Mass., Inc.*, 384 Mass. 409, 412-413 (1981) (Prior resort to the administrative agency was unnecessary where the issue was one of State statutory construction and administrative fact-finding procedures were not required); *Harrison* v. *Massachusetts Soc. of Professors/Faculty Staff Union/MTA/ NEA*, 405 Mass. 56, 59 (1989), quoting from *School Comm. of Greenfield* v. *Greenfield Educ. Assn.*, 385 Mass. 70, 76 (1982) (The doctrine of primary jurisdiction "does not apply . . . when the issue in controversy turns on questions of law which have not been committed to agency discretion"); *Ludlow Educ. Assn.* v. *Ludlow, ante* 110, 115-116 (1991) (Prior resort to the Labor Relations Commission was not appropriate because only issues of law were involved and no issue was related to the conduct of labor relations or the interpretation of a collective bargaining agreement).

A determination of the Commissioner's jurisdiction may affect nonparties who, like Reliance, may have attempted or will attempt to withdraw from the Massachusetts motor vehicle liability insurance market. Judicial determination has been viewed as appropriate in certain cases where resolution of the issues would affect numerous nonparties. See *School Comm. of Greenfield* v. *Greenfield Educ. Assn.*, 385 Mass. at 76; *Harrison* v. *Massachusetts Soc. of Professors/Faculty Staff Union/MTA/NEA*, 405 Mass. at 60 n.5. These cases, however, unlike the case before us, concerned issues that had not been committed to agency discretion. See *Greenfield* at 76; *Harrison* at 59-60. Of greater significance here is the danger that cases of individual insurers who wish to withdraw from the Massachusetts market would be decided inconsistently in separate court proceedings. See *LIFE*, 409 Mass. at 751, citing *Casey* v. *Massachusetts Elec. Co.*, 392

Mass. at 879 (Primary resort to an administrative agency is necessary where it would result in uniform and consistent regulation of the business entrusted to the agency).

This case is analogous to *Gill* v. *Board of Registration of Psychologists*, 399 Mass. at 724-729. There, the Board of Registration of Psychologists (board), which had been investigating allegations of impropriety against the plaintiff, refused to accept the plaintiff's resignation of his license and subsequently issued an order to show cause concerning the allegations. The plaintiff sought a judgment that he had a right to surrender his license voluntarily and that since he had done so, the board lacked jurisdiction to take further action in his case. *Id.* at 724-726. The initial question, both here and in *Gill*, is whether the agency had the statutory authority to refuse to accept a license surrender. The decision in each case requires an interpretation of statutory provisions entrusted to the agency's administration. In *Gill* "the board [had] held no hearing on the jurisdictional question raised by the plaintiff and . . . had [not had an] . . . opportunity to render a considered decision under the facts of [the] case." *Id.* at 727. The court held that "the board should consider the questions raised and determine whether under its interpretation of the relevant statutes, it may properly exercise jurisdiction in this case." *Id.* at 726-727, and cases cited. In the case before us, as in *Gill*, the commissioner should have the initial opportunity to interpret the relevant statutes in order to determine the scope of his authority.

Contrary to Reliance's contention, the Commissioner has not taken final action. He "has not had the opportunity to consider fully the arguments presented by the plaintiff . . . . When the plaintiff's arguments are properly raised before the [commissioner], [he] may agree with the plaintiff and determine that [he] has no jurisdiction" to refuse the license surrender. *Id.* at 729. See *East Chop Tennis Club* v. *Massachusetts Commn. Against Discrimination*, 364 Mass. at 452-453; *Nelson* v. *Blue Shield of Mass., Inc.*, 377 Mass. 746, 754 (1979); *LIFE*, 409 Mass. at 750 n.12 (The plaintiffs' claims that resort to the administrative agency would be fu-

tile were rejected in each case). The doctrine of primary jurisdiction should ordinarily be adhered to "while there remains any possibility of further administrative action." *J. & J. Enterprises, Inc.* v. *Martignetti,* 369 Mass. 535, 540 (1976), quoting from 2 Cooper, State Administrative Law 572 (1965). See *Nelson* v. *Blue Shield of Mass., Inc., supra* at 752, and cases cited (Administrative remedies should be exhausted "if the exercise of the Commissioner's regulatory power may afford the plaintiffs some relief, or may affect the scope or character of judicial relief . . . "). "The question 'is not whether the alternative [administrative] remedy is in all respects as prompt and as broad' [as a potential court ordered remedy] but whether it is 'inadequate.' " *Gordon* v. *Hardware Mut. Cas. Co.,* 361 Mass. 582, 586 (1972)(citations omitted). *See Lapierre* v. *Maryland Cas. Co.,* 14 Mass. App. Ct. 248, 251 (1982), and cases cited (The adequacy of administrative remedies is an important question in primary jurisdiction cases).

Reliance claims that there is no further procedure to be invoked. The Commissioner, however, warned Reliance in his letter of December 21, 1988, that it could be subject to a proceeding under G. L. c. 175, § 22H (see note 4, *supra*). During oral argument, the Commissioner informed the court that he would deal with Reliance's claims by (1) conducting an administrative proceeding to determine the legal effect of the attempted license surrender, (2) deciding, after gathering sufficient information, whether there were grounds for proceedings under G. L. c. 175, § 22H, and (3) beginning or having CAR begin a proceeding to determine the extent of the continuing financial obligations Reliance has to CAR. It is incumbent on the Commissioner to act promptly to resolve these issues. These proceedings will give Reliance an adequate opportunity to argue its position concerning the scope of the Commissioner's jurisdiction.[5] The Commissioner's fi-

---

[5]On July 21, 1989, the Commissioner promulgated emergency regulations, retroactive to June 27, 1989, and effective prospectively, codifying procedures to be followed by a motor vehicle insurer intending to surrender or "non-renew" its license. The regulations were thereafter regularly

nal decisions will be subject to judicial review under G. L. c. 30A, § 14. If Reliance were to appeal from the Commissioner's determinations, the reviewing court would then have the benefit of a full administrative record on which to make an informed decision. See Cella, Administrative Law and Practice § 1724 n. 31 (1986), discussing the benefits of an agency record for judicial review.

Reliance's constitutional claims, based on the Commissioner's refusal to accept the license surrenders, should likewise await the Commissioner's determinations. " '[T]he *ultimately* controlling decision of a constitutional issue is for the courts' (emphasis added)." *Samuels Pharmacy, Inc* v. *Board of Registration in Pharmacy*, 390 Mass. 583, 590 (1983), quoting from *Selectmen of Framingham* v. *Civil Serv. Commn.*, 366 Mass. 547, 554 (1974). An administrative agency may, however, consider a constitutional question under appropriate circumstances. *Ibid.* Compare *School Comm. of Greenfield* v. *Greenfield Educ. Assn.*, 385 Mass. at 76 (a constitutional challenge to the procedure for determining agency fees was not committed to agency jurisdiction); *Harrison* v. *Massachusetts Soc. of Professors/Faculty Staff Union/MTA/NEA*, 405 Mass. at 59-60 (same); *Hartford Acc. & Indemn. Co.* v. *Commissioner of Ins.*, 407 Mass. at 26 (The Commissioner had no express or implied authority to decide challenges to the constitutionality of G. L. c. 175, § 113H, as implemented by CAR rule 11). In this case, administrative proceedings will provide information relevant to Reliance's claims that the Commissioner's refusal to accept its license surrenders deprives Reliance of its property without due process of law and is confiscatory. Facts adduced con-

---

promulgated on September 29, 1989. 211 Code Mass. Regs. 54.01-54.06 (1989). The official summary of the regulations provides: "211 CMR 54.00 establishes procedures which shall constitute the administrative process by which insurers authorized to write motor vehicle insurance may initiate the process to surrender or non-renew any or all licenses. The regulation is intended to limit market disturbance and to preserve the rights of existing policy holders and others affected, while permitting insurers to phase out their business in an orderly fashion and consistently with the satisfaction of their obligations under applicable laws."

cerning the scope of the Commissioner's regulatory powers and the financial effects of the Commissioner's actions on Reliance will provide a basis for determining these claims. See *Massachusetts Automobile Rating and Acc. Prevention Bureau* v. *Commissioner of Ins.*, 381 Mass. 592, 596-597 (1980); *Fitchburg Gas and Elec. Light Co* v. *Department of Pub. Util.*, 395 Mass. 836, 855-856 (1985) (In these cases concerning confiscation claims, the reviewing court relied on the administrative agency's subsidiary findings). Reliance's constitutional claims could thus be partially or fully resolved in proceedings before the Commissioner. Finally, should the Commissioner's decision be satisfactory to Reliance, it might become unnecessary to reach the constitutional claims. See *Samuels Pharmacy, Inc.* v. *Board of Registration in Pharmacy, supra* at 590 (An agency decision favoring the plaintiffs would mean that constitutional issues need not be reached); *Lockhart* v. *Attorney Gen.*, 390 Mass. 780, 784 (1984) (The court will not decide constitutional issues unnecessarily).

*Conclusion.* The Superior Court judge's memorandum and order makes clear that she allowed the Commissioner's motion to dismiss "for reasons of primary jurisdiction." We have concluded that this was a proper exercise of discretion. See *Leahy* v. *Local 1526, Am. Fedn. of State, County & Mun. Employees*, 399 Mass. at 349. "The doctrine [of primary jurisdiction] does not divest the courts of the power to review cases; rather, it concerns the timing of the court's involvement. The precise function of the doctrine . . . is 'to guide a court in determining whether and when it should refrain from or postpone the exercise of its own jurisdiction so that an agency may first answer some question presented.' " *Id.* at 349-350, quoting from Davis, Administrative Law § 22.1, at 81 (2d ed. 1983). Accordingly, as the parties agree,

the judgment shall be amended so as to specify that it is "without prejudice,"[6] and as so amended it is affirmed.

*So ordered.*

---

[6]Where a claim has been made for past damages for which the agency cannot issue relief, a stay of the court proceedings may be the appropriate disposition in order to preclude possible statute of limitations problems. See *Frank J. Linhares Co.* v. *Reliance Ins. Co.*, 4 Mass. App. Ct. 617, 621-622 (1976), citing *J. & J. Enterprises, Inc.* v. *Martignetti*, 369 Mass. at 540; *LIFE*, 409 Mass. at 751. Reliance's brief indicates that it is aware of this potential disposition, but it has not argued that a stay is necessary in this case. Moreover, Reliance has made no claims for past damages.